# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LORI JOHNSON, et al., | Case No. 1:19 -cv-00237-DAD-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFFS' COMPLAINT AND GRANTING PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT |
| v. | |
| CITY OF ATWATER, et al., | |
| Defendants. | ORDER VACATING JUNE 18, 2019 HEARING |
| | (ECF Nos. 4, 12, 20) |
| | FOURTEEN DAY DEADLINE |

Currently before the Court is City of Atwater, Samuel Joseph, and Ken Lee's (collectively "Defendants") motion to dismiss Lori Johnson and Richard Johnson's (collectively "Plaintiffs") complaint and Plaintiffs' motion for leave to file a first amended complaint. The matters have been referred to the undersigned for the preparation of findings and recommendations.

The Court, having reviewed the record, finds these matters suitable for decision without oral argument. <u>See</u> Local Rule 230(g). Accordingly, the previously scheduled hearing set on June 19, 2019, will be vacated and the parties will not be required to appear at that time.

/ / /

# I.

## PROCEDURAL HISTORY

Plaintiffs have been engaged in a longstanding and ongoing dispute with the City of Atwater regarding water service and have filed several actions against the city and various city officials.  See Johnson v. City of Atwater ("Johnson I"), no. 1:16-cv-01636-AWI-SAB (E.D. Cal.); Johnson v. City of Atwater ("Johnson II"), no. 1:18-cv-00920-DAD-SAB (E.D. Cal.)  On January 18, 2019, Plaintiffs filed this civil rights action in the Merced County Superior Court alleging unreasonable search and seizure in violation of the Fourth Amendment and interference with the right to petition the government in violation of the First Amendment and state law claims of unreasonable seizure of private property and malicious prosecution.  On February 19, 2019, Defendants removed this matter to the Eastern District of California.

On March 11, 2019, Defendants filed a motion to dismiss Plaintiffs' complaint.  Plaintiffs filed a motion to remand on May 18, 2019.  On April 3, 2019, Defendants filed an opposition to Plaintiffs' motion to remand.  The parties stipulated that Plaintiff would have an extension of time until May 9, 2019, to respond to the motion to dismiss.

On May 9, 2019, Plaintiffs filed a first amended complaint, a motion for leave to file an amended complaint, and a notice of withdrawal of their motion to remand.  On May 13, 2019, the motion to dismiss and motion for leave to file an amended complaint were referred to the undersigned.  An order was filed on May 14, 2019 directing Defendants to file a statement of opposition or statement of non-opposition to Plaintiffs' motion to amend.  On May 15, 2019, Defendants filed a statement of opposition to Plaintiffs' motion to amend.  On May 16, 2019, an order issued finding that Plaintiffs' had waived any opposition to the motion to dismiss and setting a briefing schedule for Plaintiffs' motion for leave to amend.

On June 4, 2019, Defendants' filed an opposition to Plaintiffs' motion for leave to amend.  Plaintiffs did not file a reply to Defendant's opposition to the motion for leave to amend.

## II

## COMPLAINT ALLEGATIONS

In their initial complaint, Plaintiffs allege they are husband and wife and, at all relevant

times, resided at 1675 Drakeley Avenue in Atwater, California. (Compl. ¶¶ 1, 2, ECF No. 1-1 at 7-15; First Am. Compl. ("FAC") ¶¶ 1, 2, ECF No. 13.) Defendant Lee is a sworn peace officer with the City of Atwater; and Defendant Joseph was the acting police chief at all times relevant to the complaint. (Compl. ¶¶ 4, 5; FAC ¶¶ 4, 5.) In October 2017, Defendant Lee caused Plaintiffs' home to be searched. (Compl. ¶ 13; FAC ¶ 13.) On or about October 18, 2017, Plaintiffs' medical marijuana plants were seized from their property at 1675 Drakeley Avenue. (Compl. ¶¶ 28, 32.) Defendant Lee brought charges against Plaintiffs which proceeded through Merced Superior Court and were dismissed. (Compl. ¶ 14.) Plaintiffs have placed signs in their front yard expressing protest of the actions taken by the City which are visible to the public and the City has tried on numerous occasions to force Plaintiffs to remove the signs. (Compl. ¶ 15; FAC ¶ 15.)

Plaintiffs seek monetary damage alleging unlawful and unreasonable search of private property in violation of the Fourth Amendment; interference with free speech and the right to petition the government for redress in violation of the First Amendment; unreasonable and unlawful seizure of property in violation of California's Compassionate Use Act ("CUA") and the Medical Marijuana Program Act ("MMPA"); and malicious prosecution in violation of state law.

In their first amended complaint, Plaintiffs add the following additional allegations. On the afternoon of October 18, 2017, Defendant Lee obtained a search warrant for the property located at 1675 Drakeley Avenue in Atwater. (FAC ¶ 24.) The search warrant approved the seizure of "1) marijuana and items commonly associated with marijuana use; 2) indicia showing person in control of the property; 3) sales ledgers showing narcotics transactions; 4) to answer any phone calls or text messages; 5) evidence of a conspiracy; 6) financial records; 7) any lists or ledgers showing suppliers or customers; 8) evidence showing ownership of the premises; 9) any money or negotiable instruments; 10) property establishing the identity of persons in control of the premises or vehicles; 11) firearms; 12) evidence of theft of utilities; 13) evidence of ownership of property being searched; and, 14) personal property showing ownership." (FAC ¶ 25.)

Defendant Lee stated in the search warrant affidavit that on July 7, 2017 he observed a "makeshift greenhouse" on Plaintiff's property and saw approximately twelve marijuana plants in the ground inside the structure.  (FAC ¶ 26.)  Three months later, on October 16, 2017, Defendant Lee again observed the greenhouse over the south fence when he was at 1684 Elm.  (FAC ¶ 26.)  Two days later, an anonymous female complained that there was marijuana on the sidewalk near Plaintiff's house.  (FAC ¶ 28.)  Defendant Lee stated that Plaintiff Lori Johnson told him that she had a valid medical marijuana certificate.  (Id.)  Defendant Lee stated in the affidavit that twelve marijuana plants would be legal and that the plants he saw were in a greenhouse.  (FAC ¶ 30.)  The municipal code does not define outdoor growing.  (FAC ¶ 31.)

Plaintiff Richard Johnson has had three criminal complaints filed against him in state court since November 30, 2016.  (FAC ¶ 54.)  All three of the cases have been dismissed on the court's own motion.  (Id.)  A fourth criminal complaint charging theft of utilities has not yet been resolved.  (Id.)

Plaintiffs add a fifth cause of action alleging Monell liability.  (FAC ¶¶ 71-78.)  Plaintiffs allege that the City of Atwater and Defendant Joseph as a matter of custom, practice and policy, failed to supervise police officers to prevent, deter and punish unconstitutional searches and seizures of property.  (FAC ¶ 72.)  Plaintiffs assert that "Defendants" knew or should have known of the propensities of Defendant Lee to obtain search warrants under false pretenses and to criminalize medical marijuana use, but took no steps to correct his abuse of authority, supervise him, or discourage his unlawful use of authority.  (FAC ¶ 73.)  Plaintiffs contend that Defendants condoned and acquiesced, and ratified Defendant Lee's abusive behavior by refusing to retrain, discipline, or correct his behavior.  (FAC ¶ 74.)

**III.**

**LEGAL STANDARD**

**A.    Motion to Dismiss**

Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro

v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully harmed-me accusation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  In assessing the sufficiency of a complaint, all well-pleaded factual allegations must be accepted as true.  Iqbal, 556 U.S. at 678-79.  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. at 678.  To avoid a dismissal under Rule 12(b)(6), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 570.

In deciding whether a complaint states a claim, the Ninth Circuit has found that two principles apply.  First, to be entitled to the presumption of truth the allegations in the complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively."  Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).  Second, so that it is not unfair to require the defendant to be subjected to the expenses associated with discovery and continued litigation, the factual allegations of the complaint, which are taken as true, must plausibly suggest an entitlement to relief.  Starr, 652 F.3d at 1216.  "Dismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory."  Navarro, 250 F.3d at 732 (citing Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir.1988)).

**B.     Motion for Leave to Amend Complaint**

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend their pleading once as a matter of course at any time before a responsive pleading is served.  Fed. R. Civ. P. 15(a)(1).  Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires.  Fed. R. Civ. P.

1  15(a)(2).

2      In determining whether to grant leave to amend, the court considers five factors: "(1) bad

3  faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5)

4  whether the plaintiff has previously amended his complaint." Nunes v. Ashcroft, 375 F.3d 805,

5  808 (9th Cir. 2004); accord Madeja v. Olympic Packers, LLC., 310 F.3d 628, 636 (9th Cir.

6  2002). The factors are not given equal weight and futility alone is sufficient to justify the denial

7  of a motion to amend. Washington v. Lowe's HIW Inc., 75 F. Supp. 3d 1240, 1245 (N.D. Cal.

8  2014), appeal dismissed (Feb. 25, 2015). "[I]t is the consideration of prejudice to the opposing

9  party that carries the greatest weight." Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048,

10 1052 (9th Cir. 2003). "Absent prejudice, or a strong showing of any of the remaining [ ] factors,

11 there exists a presumption under Rule 15(a) in favor of granting leave to amend." Eminence

12 Capital, LLC, 316 F.3d at 1052.

13                                     **IV.**

14                                 **DISCUSSION**

15     Defendants move to dismiss Plaintiffs' complaint on the grounds that the City of Atwater

16 may not be held responsible under a *respondeat superior* theory of liability; Plaintiffs' Fourth

17 Amendment and state law claims fail because a search warrant issued prior to the search of

18 Plaintiffs' property; the First Amendment claim is so perfunctory it cannot be responded to; and

19 Defendants are entitled to qualified immunity. Plaintiffs did not file an opposition to the motion

20 to dismiss and have waived any argument in response.

21     Plaintiffs have filed a motion for leave to amend seeking to file an amended complaint to

22 better address their Monell claim in the complaint and to resolve issues identified by Defendants

23 in the motion to dismiss. Defendants oppose the motion on the ground that Plaintiffs have

24 completely disregarded the allegations in the original complaint and have now alleged a new

25 theory of liability that they either knew about or should have known at the time the original

26 complaint was filed. Alternately, Defendants contend that Plaintiffs' proposed amended

27 complaint will not survive a motion to dismiss because they have failed to state sufficient factual

28 allegations to state a cognizable claim.

In support of their motion to dismiss, Defendants attach the search warrant issued in the Merced Superior Court on October 18, 2017. (ECF No. 4-4.) As a general rule, the court may not consider any material outside the pleadings in ruling on a Rule 12(b)(6) motion. United States v. Corinthian Colleges, 655 F.3d 984, 998 (9th Cir. 2011). There are two exceptions to this rule, when the complaint necessarily relies on the documents or where the court takes judicial notice of documents. Lee v. City of Los Angeles, 250 F.3d 668, 689 (9th Cir. 2001). Under the Federal Rules a court may take judicial notice of a fact that is "not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Judicial notice may be taken "of court filings and other matters of public record." Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006); Lee, 250 F.3d at 689.

The incorporation by reference doctrine allows the court to consider documents that are extensively referred to in the complaint or that form the basis of the plaintiffs' claims. Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1002 (9th Cir. 2018) (citing Ritchie Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010)).

Here, the first amended complaint states that Defendant Lee obtained a search warrant on October 18, 2017. (FAC ¶ 24.) Plaintiffs assert that the search warrant authorized the seizure of certain property. (FAC 25.) Plaintiffs set forth specific allegations made in the search warrant application by Defendant Lee such as that he had previously observed a make-shift greenhouse on the property and saw approximately 12 marijuana plants inside the greenhouse. (FAC ¶ 26.) The search warrant stated that there months later Defendant Lee observed the greenhouse again and that several days later an anonymous complaint was received that there was marijuana on the sidewalk near Plaintiffs' house. (FAC ¶¶ 27, 28.) Plaintiffs allege that the search warrant application reported Plaintiff Lori Johnson's statements to Defendant Lee and clearly stated that a parcel could have twelve plants on it and that the plants were inside the greenhouse. (FAC ¶¶ 28, 29, 30, 66.) Plaintiffs contend that Defendant Lee obtained the search warrant under false pretenses and knew that there was no reasonable basis for the search. (FAC ¶¶ 34, 36.)

Plaintiffs have incorporated the search warrant into their complaint by the citations to the search warrant and their reliance on it in alleging that Defendant Lee falsely created circumstances to justify the search of their property in the application for the search warrant. The Court shall consider the October 18, 2017 search warrant in deciding whether to grant Plaintiffs' motion for leave to amend.

### A.    Section 1983

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law. Nurre v. Whitehead, 580 F.3d 1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002). To state a claim under section 1983, a plaintiff is required to show that (1) each defendant acted under color of state law and (2) each defendant deprived him of rights secured by the Constitution or federal law. Long, 442 F.3d at 1185. There is no *respondeat superior* liability under section 1983, and therefore, each defendant is only liable for his or her own misconduct. Iqbal, 556 U.S. at 677. Therefore, to state a claim, a plaintiff must demonstrate that each defendant personally participated in the deprivation of his rights. Jones, 297 F.3d at 934.

Further, a local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability. Monell v. Department of Social Services, 436 U.S. 658, 691 (1978). Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom. Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).

1.    Fourth Amendment Unreasonable Search and Seizure

Initially, Defendants moved to dismiss the complaint because Plaintiffs neglected to include the fact that Defendant Lee conducted the search and seizure of Plaintiffs' property pursuant to a search warrant that was issued on October 18, 2017 by Judge Donald E. Shaver of the Merced Superior Court. Plaintiffs have now amended the complaint to add such allegations, but Defendants argue that since it is clear that Defendant Lee conducted the search in reliance on a valid search warrant he is entitled to qualified immunity. Alternately, Defendants argue that

Plaintiffs' proposed amended complaint does not allege sufficient factual allegations to state a claim that Defendant Lee obtained the search warrant under false pretenses and with malicious intent.

The doctrine of qualified immunity protects government officials from civil liability where "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft v. al-Kidd, 563 U.S. 731, 743 (2011) (citations omitted).

To determine if a public official is entitled to qualified immunity the court uses a two-part inquiry. Saucier v. Katz, 533 U.S. 194, 200 (2001) overruled in part by Pearson, 555 U.S. 223. The court determines if the facts as alleged state a violation of a constitutional right and if the right is clearly established so that a reasonable official would have known that his conduct was unlawful. al-Kidd, 563 U.S. at 741. This does not require that the same factual situation must have been decided, but that existing precedent would establish the statutory or constitutional question beyond debate. Id.; Mattos v. Agarano, 661 F.3d 433, 442 (9th Cir. 2011). "The linchpin of qualified immunity is the reasonableness of the official's conduct." Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).

The inquiry as to whether the right was clearly established is "solely a question of law for the judge." Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro. Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)). A district court is "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236. The right the official is alleged to have violated must be defined at the appropriate level of specificity before the court can determine if it was clearly established. Dunn, 621 F.3d at 1200. First, the Court addresses whether Plaintiffs' have stated a claim for violation of the Fourth Amendment.

The Fourth Amendment provides that 'the right of the people to be secure in their

persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated and no warrants shall issue, but upon probable cause. . . . U.S. Const. amend. IV. "[T]he Fourth Amendment is enforceable against the States through the Fourteenth Amendment." Camara v. Mun. Court of City & Cty. of San Francisco, 387 U.S. 523, 528 (1967). "To establish a viable Fourth Amendment claim, a plaintiff must show not only that there was a search and seizure as contemplated by the Fourth Amendment, but also that said search and seizure was unreasonable and conducted without consent." Ctr. for Competitive Politics v. Harris, 296 F.Supp.3d 1219, 1229 (E.D. Cal. 2017) (citing Rakas v. Illinois, 439 U.S. 128, 143 (1978); and United States v. Rubio, 727 F.2d 786, 796–97 (9th Cir. 1983)).

It is a well-established principle that "except in certain carefully defined classes of cases, a search of private property without proper consent is 'unreasonable' unless it has been authorized by a valid search warrant." Groh v. Ramirez, 540 U.S. 551, 560 (2004) (quoting Camara, 387 U.S. at 528–529). Officers who have conducted a search or arrest pursuant to a facially valid search warrant and reasonably relied on that warrant are entitled to qualified immunity. Vandenburg v. Cty. of Riverside, 722 F. App'x 657, 659 (9th Cir. 2018); see also Los Angeles Cty. v. Rettele, 550 U.S. 609, 616 (2007) (The Fourth Amendment is not violated when officers execute a valid warrant and act in a reasonable manner to protect themselves from harm); Michigan v. Summers, 452 U.S. 692, 703–05 (1981) (Where "a judicial officer has determined that police have probable cause to believe that someone in the home is committing a crime" it is constitutionally reasonable to require him to open the doors of his home to allow the officers inside.). "Defendants will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Malley v. Briggs, 475 U.S. 335, 341 (1986).

A magistrate judge's issuance of a warrant will generally shield the officer from liability for subsequent execution of that warrant. Summers, 452 U.S. at 701. However, if the officer submitted an affidavit that contains material false statements "knowingly and intentionally" or with "reckless disregard for the truth," "he cannot be said to have acted in a reasonable manner,

and the shield of qualified immunity is lost." <u>Branch v. Tunnell</u>, 937 F.2d 1382, 1387 (9th Cir. 1991) (internal quotations and citations omitted), overruled on other grounds by <u>Galbraith v. Cty. of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002); <u>accord</u> <u>Mendocino Envtl. Ctr. v. Mendocino Cty.</u>, 192 F.3d 1283, 1295 (9th Cir. 1999).

Here, Plaintiffs' original complaint alleged that Defendant Lee caused Plaintiffs' home to be searched and that medical marijuana plants were seized from their property. However, there are no factual allegations in Plaintiffs' original complaint for the Court to reasonably infer that Defendant Lee was responsible for an unreasonable search and seizure of Plaintiffs' property. <u>Iqbal</u>, 556 U.S. at 678-79. Plaintiffs' complaint fails to allege sufficient factual allegations to state a plausible claim for violation of the Fourth Amendment.

Plaintiffs' first amended complaint adds the allegations that Defendant Lee obtained a search warrant prior to the search, but it is devoid of allegations to support a claim that the warrant was not valid or that the warrant failed to contain sufficient information to establish probable cause to search Plaintiffs' property. In their first amended complaint, Plaintiffs allege that Defendant Lee obtained a search warrant and set forth certain factual statements in the affidavit in support of the warrant. (FAC ¶¶ 24-30.) Plaintiffs allege that "Officer LEE obtained the search warrant under false pretenses and with malicious intent because he clearly states in his search warrant affidavit that all plants were in a greenhouse and that he only observed 12 plants." (FAC ¶ 34.) Plaintiffs further allege that "Defendant LEE knew there was no reasonable basis for a search." (FAC ¶ 36.) Finally, Plaintiffs allege that "[t]he search of Plaintiffs' property was done under falsely created pretenses." (FAC ¶ 38.)

The allegation that a search was conducted pursuant to an "ill-begotten or otherwise invalid warrant" is a claim for judicial deception. <u>Oceanside Organics v. Cty. of San Diego</u>, 341 F.Supp.3d 1129, 1136 (S.D. Cal. 2018). To state a claim that the officer is liable under the Fourth Amendment for judicial deception, "a § 1983 plaintiff must show that the investigator 'made deliberately false statements or recklessly disregarded the truth in the affidavit' and that the falsifications were 'material' to the finding of probable cause." <u>Galbraith</u>, 307 F.3d at 1126; <u>accord</u> <u>Oceanside Organics</u>, 341 F.Supp.3d at 1137. "To prevail on the materiality element,

1  Plaintiffs must show that a search warrant would not have issued had the affidavit contained the
2  truthful or omitted information." <u>Oceanside Organics</u>, 341 F.Supp.3d at 1137.

3      Plaintiffs' proposed first amended complaint alleges that the affidavit stated that
4  Defendant Lee had previously observed the makeshift greenhouse in July of 2017 and had
5  observed twelve marijuana plants growing inside the greenhouse.  (FAC ¶ 26.)  Three months
6  later, he observed the greenhouse again and several days later a report was received that there
7  was marijuana on the sidewalk near Plaintiffs' residence.  (FAC ¶ 28.)  "Ms. Johnson told
8  Officer LEE she had a valid medical marijuana certificate."  (FAC ¶ 28.)  The affidavit also
9  states that the municipal ordinance allows the possession of twelve marijuana plants per parcel,
10  that possessing twelve marijuana plants would be legal, and that the plants he saw were in
11  greenhouse which is allowed.  (FAC ¶ 29.)

12      Plaintiffs allege that Defendant Lee obtained the search warrant under false pretenses
13  because he knew there was no reasonable basis for the search.  (FAC ¶ 34.)  However, Plaintiffs
14  have not identified any deliberately false statements set forth in the affidavit, any omitted
15  statements that would destroy probable cause, or any statements that were made with reckless
16  disregard for the truth.  While Plaintiffs make a conclusory statement that there was no probable
17  cause for the search, Plaintiffs must set forth sufficient factual allegations for the Court to
18  reasonably infer that the defendant is liable for the conduct alleged.  <u>Iqbal</u>, 556 U.S. at 678-79.
19  Here, all the factual allegations in the first amended complaint set forth factual statements and
20  Plaintiffs have not alleged that any of the identified statements are false or were made with
21  reckless disregard for their truth or that information was omitted that would be material to the
22  finding of probable cause.

23      Further, the affidavit contains additional factual statements which the state court
24  considered in determining whether probable cause existed to authorize the search warrant.
25  Defendant Lee stated that Plaintiffs had previously been found to be growing 95 marijuana plants
26  and had admitted that they had rented the property to a third party for the purposes of growing
27  marijuana for profit and they were to be paid after the harvest.  (ECF No. 4-4 at 4.)  The affidavit
28  states that Plaintiff Lori Johnson initially denied that there was marijuana growing in the

greenhouse on October 18, 2017. (<u>Id.</u>) She then stated that she had a medical marijuana card. (<u>Id.</u>) Both Plaintiffs told Defendant Lee that someone else had been given permission to grow marijuana on their property. (<u>Id.</u>) Plaintiff Lori Johnson stated that she received marijuana for her own use from the grower, but neither of the plaintiffs knew the intended use of the marijuana. (<u>Id.</u>) Plaintiffs have not stated a plausible claim that Defendant Lee acted with deliberate or reckless disregard for the truth and have failed to state a claim for violation of their Fourth Amendment rights.

Defendants move for the Court to find that Defendant Lee is entitled to qualified immunity and dismiss the claim without leave to amend. However, the Court finds that at this stage of the proceedings it would be premature to find qualified immunity while the basis of Plaintiffs' Fourth Amendment claim is not clear.

2.    <u>First Amendment</u>

Defendants move to dismiss Plaintiffs' First Amendment claim contending that the pleading is so perfunctory that they are unable to respond. Plaintiffs' bring a cause of action for interference with free speech, right to petition the government, and retaliation.

Plaintiffs' original complaint is devoid of any factual allegations sufficient to state a cognizable claim for a violation of their rights under the First Amendment and Defendants' motion to dismiss the First Amendment claim should be granted.

In the first amended complaint, Plaintiffs allege that they have a right under the First Amendment to place signs in their yard, attend and speak at public meetings, and that Defendants are tired of the signs in Plaintiffs yard and of the time Plaintiffs take up at council meetings. Plaintiffs allege that Defendants have taken action to intimidate and force Plaintiffs to stop their free speech activities, including bringing criminal charges against Plaintiffs. Plaintiffs assert that Defendant Lee had reason to know that state law preempts the attempt to criminalize possession and cultivation of marijuana.

"In order to demonstrate a First Amendment violation, a plaintiff must provide evidence showing that by his actions the defendant deterred or chilled the plaintiff's political speech and such deterrence was a substantial or motivating factor in the defendant's conduct." <u>Mendocino</u>

Envtl. Ctr., 192 F.3d at 1300 (internal punctuation and citations omitted). The appropriate consideration is "whether an official's acts would chill or silence a person of ordinary firmness from future First Amendment activities." Id. (quoting Crawford–El v. Britton, 93 F.3d 813, 826 (D.C. Cir. 1996), vacated on other grounds, 520 U.S. 1273 (1997)). A required element of any claim is intent to inhibit speech which can be demonstrated through either direct or circumstantial evidence. Mendocino Envtl. Ctr., 192 F.3d at 1300-01.

   a.   **Free Speech**

The First Amendment prohibits abridging freedom of speech and protects the right to petition the government for redress of a grievance. U.S. Const. amend. I. Signs are a form of expression protected by the Free Speech Clause, City of Ladue v. Gilleo, 512 U.S. 43, 48 (1994), and the First Amendment also protects the right to protest, United States v. Baugh, 187 F.3d 1037, 1042 (9th Cir. 1999). "[D]ebate on public issues should be uninhibited, robust, and wide-open, and . . . it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." Menotti v. City of Seattle, 409 F.3d 1113, 1140 (9th Cir. 2005) (quoting New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964)). However, "the First Amendment does not guarantee the right to communicate one's views at all times and places or in any manner that may be desired." Heffron v. Int'l Soc. for Krishna Consciousness, Inc., 452 U.S. 640, 647 (1981). It is well accepted that the government can regulate the physical characteristics of signs within reasonable bounds and without a censorial purpose. City of Ladue, 512 U.S. at 48.

Although Plaintiffs allege that they have placed signs in their yard protesting actions of the city and that Defendants are tired of the signs in their yard, the first amended complaint is devoid of any factual allegations regarding any sign that was placed in their yard or that any named defendant took any action intended to inhibit Plaintiffs' speech. The allegation that the "City has tried on numerous occasions to force Plaintiffs to remove their signs" cannot reasonably be construed as action intended to inhibit Plaintiffs' speech based on the claims raised

in the first amended complaint.[1]  Plaintiffs have failed to state a cognizable claim for violation of their right to freedom of speech.

### b.    Right to Petition the Government

"In order to establish that government action has infringed on the constitutional right to petition the government, an individual need not show that the government has directly interfered with the exercise of this right."  O'Keefe v. Van Boening, 82 F.3d 322, 325 (9th Cir. 1996) (citing Laird v. Tatum, 408 U.S. 1, 11 (1972)).  The right to petition allows citizens to express their ideas, hopes, and concerns to their government and their elected representatives. . . ."  Borough of Duryea, Pa. v. Guarnieri, 564 U.S. 379, 388 (2011).  "[T]he right to petition is generally concerned with expression directed to the government seeking redress of a grievance."  Guarnieri, 564 U.S. at 388.  However, the right to petition is not absolute and the Supreme Court has held that libel, baseless litigation, and petitions that contain intentional and reckless falsehoods are not protected by the First Amendment's right to petition.  McDonald v. Smith, 472 U.S. 479, 484 (1985).

Here, Plaintiffs have only alleged that the defendants are tired of the time that Plaintiffs have taken up at City Council meetings.  There are no factual allegations in the first amended complaint to demonstrate that any named defendant has taken action intended to interfere with Plaintiffs' right to petition the government.  Plaintiffs have failed to state a cognizable claim for violation of their right to petition the government.

### c.    Retaliation

Plaintiffs make the conclusory allegation that the actions of all defendants were acts of retaliation.  However, Plaintiffs' first amended complaint fails to allege any facts to support such a claim.

"[T]he law is settled that as a general matter the First Amendment prohibits government

---

[1] Defendants also argue that Plaintiffs' First Amendment claims have already been addressed by the jury verdict in Johnson I, no. 1:16-cv-01636-AWI-SAB.  The Court takes judicial notice of court records in Johnson I.  Reyn's Pasta Bella, LLC, 442 F.3d at 746 n.6; Lee, 250 F.3d at 689.  On January 30, 2019, the jury in this action returned a verdict in favor of Defendants on Plaintiffs' claim that their signs were taken with the intent to retaliate, obstruct, or chill Plaintiffs' First Amendment rights.  Johnson I, no. 1:16-cv-01636-AWI-SAB (ECF No. 115.)  Whether the jury finding is entitled to preclusive effect in this action will require Defendants to file an adequately briefed motion addressing the required elements to find issue or claim preclusion.

officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). To state a retaliation claim, the plaintiff must plead that the official took adverse action because he engaged in protected speech. Nieves v. Bartlett, __ S. Ct. __, 2019 WL 2257157, at *5 (U.S. May 28, 2019); Hartman, 547 U.S. at 259. It is not enough that the official acted with a retaliatory motive and that the plaintiff was injured, the plaintiff must show that the retaliatory motive caused the injury. Nieves, 2019 WL 2257157, at *5.

To state a retaliatory prosecution or arrest claim, a plaintiff must prove the element of retaliatory animus as the cause of injury. Hartman, 547 U.S. at 261; see also Nieves, 2019 WL 2257157, at *8 (To prevail on a retaliatory arrest or prosecution claim, the plaintiff "must show that the retaliation was a substantial or motivating factor behind the [arrest/prosecution.]"). To state a retaliatory prosecution or arrest claim, a plaintiff must allege "that the decision to press charges was objectively unreasonable because it was not supported by probable cause." Nieves, 2019 WL 2257157, at *6. Where the plaintiff is alleging a retaliatory prosecution case against a nonprosecuting official, he must prove that the nonprosecuting official acted in retaliation and show that the nonprosecuting official induced the prosecutor to bring charges that would not have been initiated without his urging. Hartman, 547 U.S. at 262.

Plaintiffs' retaliation claim fails because they have failed to allege any factual allegations to support a claim that Defendant Lee acted with a retaliatory motive in seeking the search warrant, in conducting the search, or in referring the charges to the prosecuting officer. Further, Plaintiffs' first amended complaint is devoid of any action by Defendants City or Atwater or Joseph and, as discussed above, a section 1983 claim cannot be based on the theory of *respondeat superior*. Iqbal, 556 U.S. at 677.

### d. Conspiracy

Plaintiffs first amended complaint alleges that Defendants acted pursuant to a conspiracy to deprive the plaintiffs of their rights in violation of the United States Constitution and state law. (FAC ¶¶ 9, 10.)

To state a conspiracy claim under section 1983, a plaintiff must plead "(1) the existence

of an express or implied agreement among the [defendants] to deprive him of his constitutional rights, and (2) an actual deprivation of those rights resulting from that agreement." Avalos v. Baca, 596 F.3d 583, 592 (9th Cir. 2010) (quoting Avalos v. Baca, 517 F.Supp.2d 1156, 1169 (C.D. Cal. 2007), and Ting v. United States, 927 F.2d 1504, 1512 (9th Cir.1991)). Further to prove a conspiracy claim the facts must show a meeting of the minds to violate to violate the plaintiff's constitutional rights. Miller v. California, 355 F.3d 1172, 1177 n.3 (9th Cir. 2004); Mendocino Envtl. Ctr., 192 F.3d at 1301; Woodrum v. Woodward Cty., Okl., 866 F.2d 1121, 1126 (9th Cir. 1989). "To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy." Franklin v. Fox, 312 F.3d 423, 441 (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1541 (9th Cir. 1989)).

Here, as discussed above, Plaintiff has failed to allege facts to show an actual deprivation of his federal or constitutional rights. Because Plaintiffs have failed to allege an underlying constitutional claim, the conspiracy claim also fails. Lacey v. Maricopa Cnty., 693 F.3d 896, 935 (9th Cir. 2012). Plaintiffs' failure to state a claim for violation of his federal rights eviscerates his conspiracy claim under section 1983. Cassettari v. Nevada Cty., Cal., 824 F.2d 735, 739 (9th Cir. 1987). Further, there are no factual allegations in the first amended complaint by which the Court could reasonably infer that the named defendants had a meeting of the minds to violate Plaintiffs' rights.

**B.    Monell Claim**

In their first amended complaint, Plaintiffs bring a Monell claim alleging that Defendants City of Atwater and Joseph had a custom, practice, and policy of failing to supervise officers to prevent, deter, and punish unconstitutional searches and seizures of property. Plaintiffs contend that Defendants knew or should have known that Defendant Lee had a propensity to obtain search warrants under false pretenses, of his attempt to criminalize medical marijuana use and took no steps to supervise him, correct his abuse of authority, or discourage his unlawful use of authority. Rather, Plaintiffs allege that they condoned, acquiesced, and ratified his dishonest behavior by failing to retrain, discipline, or correct his behavior.

A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy. Monell, 436 U.S. at 694. Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional violation. Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002). "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' " Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)). The deliberate indifference standard for municipalities is an objective inquiry. Castro, 833 F.3d at 1076.

"A plaintiff may []establish municipal liability by demonstrating that (1) the constitutional tort was the result of a 'longstanding practice or custom which constitutes the standard operating procedure of the local government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy such that the challenged action constituted official policy; or (3) an official with final policy-making authority 'delegated that authority to, or ratified the decision of, a subordinate.' " Price v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & County of San Francisco, 308 F.3d 968, 984–85 (9th Cir.2002)).

A plaintiff seeking to impose liability upon a municipality is required to identify the policy or custom that caused the constitutional injury. Bd. of Cty. Comm'rs of Bryan Cty., Okl., 520 U.S. at 403. A municipality may only be held liable for those deprivations that result "from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Id. at 403–04. "Similarly, an act performed pursuant to a 'custom' that has not been formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. at 404.

1    Here, Plaintiffs have failed to allege facts to state a claim based on a custom or policy of

2    the municipality.  Although Plaintiffs allege that Defendant Lee fraudulently obtained the search

3    warrant, as discussed above, Plaintiffs have failed to allege facts to state a claim based on the

4    issuance of the search warrant.

5           Plaintiffs allege a pattern and practice of failing to supervise.  It has been "long

6    recognized that a plaintiff may be able to prove the existence of a widespread practice that,

7    although not authorized by written law or express municipal policy, is 'so permanent and well

8    settled as to constitute a 'custom or usage' with the force of law.' "  City of St. Louis v.

9    Praprotnik, 485 U.S. 112, 127 (1988).  "Where a plaintiff claims that the municipality has not

10   directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards

11   of culpability and causation must be applied to ensure that the municipality is not held liable

12   solely for the actions of its employee."  Bd. of Cty. Comm'rs of Bryan Cty., Okl., 520 U.S. at

13   405.  Where a cause of action has been recognized based on a single decision attributable to the

14   municipality there must be evidence that the municipality acted and the plaintiff suffered a

15   deprivation of federal rights along with proving fault and causation.  Id. at 406.  In these cases,

16   the decisions of the final decisionmaker were attributable to the municipality and could establish

17   liability.  Id.; see also Praprotnik, 485 U.S. at 123 (an unconstitutional policy can be inferred

18   from a single decision taken by officials responsible for implementing municipal policy but not

19   from a single unconstitutional action by an employee).

20          Here, Plaintiffs have failed to allege facts by which the Court can reasonably infer that

21   there is a custom or policy of failing to supervise employees.  Plaintiffs have merely set forth a

22   single incident in which they are alleging an unconstitutional search and seizure by a law

23   enforcement officer.  "A plaintiff cannot prove the existence of a municipal policy or custom

24   based solely on the occurrence of a single incident of unconstitutional action by a non-

25   policymaking employee."  Davis v. City of Ellensburg, 869 F.2d 1230, 1233 (9th Cir. 1989).

26   Plaintiffs have failed to state a plausible claim based on a custom or policy.

27          **C.      State Law Claims**

28          Plaintiffs bring state law claims for unreasonable search and seizure under the CUA and

MMPA and malicious prosecution. Pursuant to 28 U.S.C. § 1367(a), district courts "have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The Court shall consider whether Plaintiffs have stated a state law claim for purposes of providing guidance should Plaintiffs decide to file an amended complaint.

The California Tort Claims Act requires that a tort claim against a public entity or its employees be presented to the California Victim Compensation and Government Claims Board no more than six months after the cause of action accrues. Cal. Gov't Code §§ 905.2, 910, 911.2, 945.4, 950-950.2. Presentation of a written claim, and action on or rejection of the claim are conditions precedent to suit. <u>State v. Superior Court of Kings County (Bodde)</u>, 32 Cal.4th 1234, 1239 (Cal. 2004); <u>Shirk v. Vista Unified School District</u>, 42 Cal.4th 201, 209 (2007). To state a tort claim against a public employee, a plaintiff must allege compliance with the California Tort Claims Act. Cal. Gov't Code § 950.6; <u>Bodde</u>, 32 Cal.4th at 1244. "[F]ailure to allege facts demonstrating or excusing compliance with the requirement subjects a compliant to general demurrer for failure to state a cause of action." <u>Bodde</u>, 32 Cal.4th at 1240-41. Here, Plaintiffs allege that they have complied with the Tort Claims Act by submitting claim forms which have been rejected. (FAC ¶ 18.)

1. <u>Unreasonable Search and Seizure</u>

In both the original and their first amended complaint, Plaintiffs allege an unreasonable search and seizure in violation of the CUA and MMPA. In <u>Oceanside Organics</u>, the court discussed California's laws regarding the possession and cultivation of marijuana.

> In 1996, California's electorate passed Proposition 215 and enacted the Compassionate Use Act ("CUA"), which generally exempted medical marijuana patients and their caregivers from laws criminalizing possession and cultivation of marijuana. In <u>People v. Mower</u>, the California Supreme Court held "section 11362.5(d) [of the CUA] does not grant any immunity from arrest." In 2003, the California Legislature enacted the Medical Marijuana Program Act ("MMPA") to clarify the scope of the CUA. "At the heart of the MMP[A] is a voluntary 'identification card' scheme that, unlike the CUA—which . . . provides only an affirmative defense to a charge of possession or cultivation—provides protection against arrest for those and related crimes." A person who suffers from a serious medical condition or a primary caregiver may receive an identification card that

"can be shown to a law enforcement officer who otherwise might arrest the program participant or his or her primary caregiver."

California courts have recognized that the enactment of the MMPA did not modify the <u>Mower</u> holding, i.e., that the CUA does not grant immunity from arrest for patients with only a marijuana recommendation. Thus, as one California Court of Appeal has stated:

[T]he status of [a] qualified [marijuana] patient does not confer an immunity from arrest. Law enforcement officers may arrest a qualified patient for marijuana offenses where they have probable cause, based on all of the surrounding facts including qualified patient status when they have reason to believe, for instance, that the arrestee does not possess marijuana for his personal medical purposes.

<u>Oceanside Organics</u>, 34 F.Supp.3d at 1139 (internal citations omitted). An individual who possesses a valid identification card "will have immunity from arrest 'unless there is probable cause to believe that the information contained in the card is false or falsified, the card has been obtained by means of fraud, or the person is otherwise in violation of the provisions of this article.' " Cal. Health & Safety Code § 11362.71(e).

Here, Plaintiffs are alleging that Defendant Lee violated the MMPA and CUA by confiscating Plaintiffs' marijuana plants, however, if Defendants had sufficient probable cause for a warrant to have properly issued their judicial deception argument fails. <u>Oceanside Organics</u>, 341 F.Supp.3d at 1140. "The existence of the Compassionate Use Act [ ] and the Medical Marijuana Program Act [ ] do not change the probable cause analysis." <u>Id.</u> (quoting <u>United States v. Carpenter</u>, 461 Fed. App'x 539, 540 (9th Cir. 2011) (unpublished).

Here, Plaintiffs' first amended complaint demonstrates that Defendant Lee presented an affidavit in support of the search warrant and the judge determined that there was probable cause for the search warrant to issue. <u>See</u> <u>Oceanside Organics</u>, 341 F.Supp.3d at 1141–42 ("The Court considers the Supreme Court's guidance that '[w]here the alleged . . . violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner.' <u>Messerschmidt v. Millender</u>, 565 U.S. 535, 546, 132 S. Ct. 1235, 182 L.Ed.2d 47 (2012) (citing <u>United States v. Leon</u>, 468 U.S. 897, 922–23, 104 S. Ct. 3405, 82 L.Ed.2d 677 (1984) ) ('It is the magistrate's responsibility to determine whether the officer's allegations establish probable cause and, if so, to issue a warrant comporting in form with the requirements of the Fourth Amendment.' "); <u>Call</u>

v. Badgley, 254 F.Supp.3d 1051, 1067 (N.D. Cal. 2017) (Even if the plaintiff could legally cultivate marijuana, his Informed Medical Consent & Verification card does not dispel otherwise legitimate probable cause for an arrest or render the officer unreasonable in concluding he had probable cause to arrest the plaintiff.).  The CUA provides an affirmative defense to prosecution for crimes of possession and cultivation, but it does not grant immunity from arrest for those crimes.  People v. Kelly, 47 Cal.4th 1008, 1013 (2010).  The MMPA does provide protection from arrest "unless there is reasonable cause to believe that the information contained in the card is false or falsified, the card has been obtained by means of fraud, or the person is otherwise in violation of the provisions of the article."  Kelly, 47 Cal.4th at 1014-15.  Neither the CUA nor the MMPA destroy probable cause.  Stewart v. Morris, No. 10-CV-04106-NJV, 2013 WL 5268977, at *8 (N.D. Cal. Sept. 17, 2013).

Because the first amended complaint demonstrates that a neutral magistrate found probable cause to issue the search warrant, and Plaintiffs have failed to state a claim for judicial deception as discussed above, Plaintiffs have failed to state a claim for illegal search and seizure based on the CUA and MMPA.

### 2.  Malicious Prosecution

Plaintiffs bring a malicious prosecution claim against Defendant Lee, however the California Supreme Court has held that police officers are entitled to statutory immunity from liability for malicious prosecution under California Government Code section 821.6.  Asgari v. City of Los Angeles, 15 Cal.4th 744, 7 (1997), as modified on denial of reh'g (Mar. 17, 1997); see also Sharp v. Cty. of Orange, 871 F.3d 901, 921 (9th Cir. 2017) (immunity under section 821.6 is limited to malicious prosecution claims and has been expanded to investigative steps taken prior to judicial proceedings, including action by police officers); Goss v. Skipper, No. E056172, 2015 WL 5723662, at *3 (Cal. Ct. App. Sept. 30, 2015) (unpublished) (Under California law, public employees and the public entity are entitled to statutory immunity from claims of malicious prosecution); Pagtakhan v. Doe, No. C 08-2188 SI (PR), 2014 WL 2083041, at *3 (N.D. Cal. May 19, 2014) (same).  Section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding

within the scope of his employment, even if he acts maliciously and without probable cause."

Here, in their third cause of action for malicious prosecution, Plaintiffs assert that Defendant Lee instituted legal action against Plaintiffs without probable cause. (FAC ¶ 52.) Plaintiffs also allege that there have been three criminal cases instituted against Plaintiff Richard Johnson and two have been dismissed on the court's own motion. (FAC ¶ 54.) A fourth case has been instituted that has not yet been resolved. (FAC ¶ 56.) Defendants in this action are police officers and the public entity who are all immune under section 821.6 for malicious prosecution. The Court recommends that Plaintiffs' malicious prosecution claim be dismissed without leave to amend.

### D.    Leave to Amend

Under Rule 15 of the Federal Rules of Civil Procedure, leave to amend shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The Court considers the five factors of "(1) bad faith; (2) undue delay; (3) prejudice to the opposing party; (4) futility of amendment; and (5) whether the plaintiff has previously amended his complaint" in determining if leave to amend should be granted. Nunes, 375 F.3d at 808.

Defendants oppose Plaintiffs' motion for leave to amend arguing that Plaintiffs were aware that the search of their home was based on a search warrant and they deliberately deleted those facts from the original complaint. Defendants argue that since Plaintiff deliberated ignored the search warrant and related documents and are now setting forth a completely new theory of liability that they knew about at the time of the filing of their original complaint, the court should deny leave to amend.

Plaintiffs' original complaint alleged that their residence was searched without probable cause. The first amended complaint includes additional allegations that reference the search warrant that was issued, and alleges that there was no probable cause for the search and seizure. Although Plaintiffs allege in the first amended complaint that probable cause is not present due to judicial deception, both complaints allege a lack of probable cause. Regardless of the new allegations contained in the first amended complaint, the Court finds that this action differs from those cases relied on by Defendant in arguing that leave to amend should be denied.

In Kaplan v. Rose, 49 F.3d 1363, 1370 (9th Cir. 1994), overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605 (9th Cir. 2017), the district court found that the defendant would suffer prejudice if the plaintiff was allowed to amend the complaint. Kaplan, 49 F.3d at 1370. The parties had been involved in voluminous and protracted discovery and the expense, wear and tear on individuals and companies weighed toward prejudice. Id. The trial in the matter was only two months away and discovery was completed. Id. Additionally, the plaintiff had already amended the complaint twice and the facts that they were seeking to amend to include had been known to the party since the litigation began. Id. In affirming the denial of leave to amend, the appellate court noted that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." Id. (quoting Acri v. International Ass'n of Machinists, 781 F.2d 1393, 1398 (9th Cir.), cert. denied, 479 U.S. 816 (1986)).

Similarly, in Invest Almaz v. Temple-Inland Forest Prod. Corp., 243 F.3d 57 (1st Cir. 2001), the district court denied leave to amend where the plaintiff attempted to add new claims in their opposition to the defendant's motion for judgment as a matter of law following trial. Invest Almaz, 243 F.3d at 70. The plaintiff moved to amend to conform with the evidence under Rule 15(b) and the plaintiffs argued that defendants would not be prejudiced because the claims tracked other claims that were plead in the complaint. Id. The district court found that the last minute inclusion of the claims would be prejudicial to the defendant because the claims had to meet the requirements of Rule 9 to plead fraud with particularity. Id. The judge denied the request to amend as being untimely. Id. The appellate court affirmed the denial of leave to amend finding that there was a strong inference that the defendant would be prejudiced by allowing amendment right before the defendant began presenting its case at trial and, additionally, there was nothing to show that the plaintiff had provided a valid reason for its neglect and delay. Id. at 72.

Here, none of the factors weighing against amendment in Kaplan and Invest Almaz are present. This action was removed to this court on February 19, 2019, and the mandatory

scheduling conference has not yet taken place. Plaintiffs have not previously amended their complaint, discovery has not commenced, and there are no pending deadlines that would be impacted by allowing amendment of the complaint. Further, Defendants have not articulated any prejudice they would suffer by allowing amendment of the complaint.

Given the liberal policy of allowing amendment of the complaint under Rule 15(a), the Court recommends that Plaintiffs be granted leave to file an amended complaint. However, given the above discussion regarding the deficiencies in the proposed first amended complaint, the Court recommends that it be disregarded and that Plaintiffs be required to file an amended complaint that addresses the deficiencies described herein.

For the purpose of drafting an amended complaint, Plaintiffs are advised of the following. Under Twombly and Iqbal "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678. This requires factual content for the court to draw the reasonable inference that the defendant is liable for the alleged misconduct. Id. A complaint stops short of the line between probability and the possibility of relief where the facts pled are merely consistent with a defendant's liability. Id. Further, while the court is to accept all "well pleaded factual allegations" in the complaint as true, id. at 679, it is not bound to accept as true labels, conclusions, formulaic recitations of the elements of a cause of action or legal conclusions couched as factual allegations, Twombly, 550 U.S. at 555. Finally, the conclusory allegations in the complaint are not entitled to the presumption of truth. Iqbal, 556 U.S. at 681.

Plaintiffs' first amended complaint must contain sufficient factual allegations to give the defendant fair notice of the claim and the grounds upon which it rests. Twombly, 550 U.S. at 555. Additionally, to state a claim under section 1983, Plaintiffs must link each named defendant to an act or failure to act that violated their federal rights. Jones, 297 F.3d at 934. An allegation that "defendants" did something is not sufficient to place any defendant on notice that he is charged with the conduct alleged.

In their original and first amended complaint, Plaintiffs bring each cause of action against all defendants without identifying what act each defendant is alleged to have done to violate the

right asserted.  Plaintiffs should clearly set forth the acts that each defendant is alleged to have done and should refrain from conclusory allegations that lack factual support in the complaint.

Plaintiffs must set forth each claim to be prosecuted in a separate count. Fed. R. Civ. P. 10(b).  References within the amended complaint to specific violations of law or theories of liability that are not contained in a separate count will not be considered as adequately pled and the Court shall only consider only those claims and theories of liability that are set forth in a specific cause of action.

Finally, Plaintiffs are advised of Rule 11 of the Federal Rules of Civil Procedure which provides that by presenting a pleading, written motion, or other paper to the Court a party or attorney is certifying that to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: "(1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Fed. R. Civ. Proc. 11(b).  Rule 11 provides for the imposition of sanctions when the Court finds that the Rule has been violated and if the Court finds that any party has violated Rule 11 it will not hesitate to recommend that sanctions be imposed.

## V.

## CONCLUSION AND RECOMMENDATION

The Court finds that Plaintiffs' complaint fails to state a cognizable claim and recommends that Defendants' motion to dismiss be granted.  Under the liberal standards governing amendment of the complaint, Plaintiffs' motion for leave to file an amended complaint should be granted.  However, Plaintiffs' proposed first amended complaint fails to state a cognizable claim and Plaintiffs' should be required to file an amended complaint which

addresses the deficiencies identified in this findings and recommendations.[2]

Based on the foregoing, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion to dismiss Plaintiffs' complaint be GRANTED;

2. Plaintiffs' motion for leave to file an amended complaint be GRANTED;

3. Plaintiffs' first amended complaint filed May 9, 2019 be DISREGARDED; and

4. Plaintiffs be ordered to file a first amended complaint that addresses the deficiencies that are identified herein.

IT IS FURTHER ORDERED that the hearing set for June 18, 2019, in Courtroom 9 is HEREBY VACATED.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within **fourteen (14) days** of service of this recommendation, any party may file written objections to this findings and recommendations with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **June 14, 2019**

UNITED STATES MAGISTRATE JUDGE

---

[2] Plaintiffs are advised that they are not being granted leave to file an amended complaint at this time. Once the district judge addresses the findings and recommendations, an order will issue addressing leave to amend.

27